# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACOB T. BARTAKOVITS, on behalf of himself and others similarly situated,** | |
| **Plaintiff,** | **CIVIL ACTION** |
| **v.** | **CASE NO. 5:20-CV-01602** |
| **WIND CREEK BETHLEHEM LLC d/b/a WIND CREEK BETHLEHEM,** | *Electronically Filed* |
| **Defendant.** | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF UNOPPOSED MOTION TO DIRECT CLASS NOTICE
<u>AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

SUMMARY OF THE LITIGATION .............................................................................. 2

I.   The Nature of the Claims ........................................................................................ 2

   A.   The FLSA and PMWA's Tip Credit Notice Requirements ...................................... 3

   B.   The FLSA and PMWA's Wage Deduction Requirements .......................................... 5

II.  Procedural History of the Litigation ...................................................................... 6

III. The Parties Engaged in Arm's Length Settlement Negotiations .......................... 8

SUMMARY OF KEY SETTLEMENT TERMS ........................................................... 8

I.   The Settlement Classes ............................................................................................ 8

II.  The Settlement Benefits ........................................................................................... 9

III. Proposed Notice Program, Settlement Structure, and Release ........................... 10

IV.  Service Awards, Attorneys' Fees and Costs ......................................................... 11

ARGUMENT ................................................................................................................... 11

I.   Standard of Review for Preliminary Approval of a Class Action Settlement .... 11

II.  The Proposed Settlement is Fair, Reasonable, and Adequate ............................. 13

   A.   Class Counsel Has Adequately Represented the Class .......................................... 13

   B.   The Settlement Was Negotiated at Arm's Length .................................................. 14

   C.   The Relief Provided to the Class is Adequate ....................................................... 14

      1.   The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal. ..................................................................... 16

      2.   The relief provided to the class is adequate considering the effectiveness of distributing relief to the class. ...................................... 18

      3.   The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees. .............................................. 18

      4.   The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e). .......................... 19

   D.   The Settlement Treats Class Members Equitably to One Another .......................... 19

IV.  The FLSA Release Should Be Approved as a Fair and Reasonable Resolution of a Bona Fide Dispute ......................................................................................... 20

V.   Class Certification for Settlement Purposes is Warranted .................................. 21

   A.   Numerosity is Likely to be Satisfied ...................................................................... 21

B.     Commonality is Likely to be Satisfied ...................................................... 22

C.     Typicality is Likely to be Satisfied.......................................................... 23

D.     Adequacy is Likely to be Satisfied .......................................................... 23

E.     Predominance is Likely to be Satisfied ................................................... 24

F.     Superiority is Likely to be Satisfied ........................................................ 26

V.     The Court Should Appoint Plaintiff's Counsel as Class Counsel....................................... 28

VI.    The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines ................ 29

CONCLUSION ............................................................................................................... 31

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acosta v. Mezcal, Inc.*,
  2019 WL 2550660 (D. Md. June 20, 2019) .................................................. 4

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231 (1997) ............................................... 27, 28

*Arriaga v. Fla. Pac. Farms, L.L.C.*,
  305 F.3d 1228 (11th Cir. 2002) ......................................................... 6

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .............................................................. 22

*Bansept v. G & M Auto.*,
  434 F. Supp. 3d 253 (E.D. Pa. 2020) ................................................... 5

*Bouder v. Prudential Fin., Inc.*,
  2015 WL 857655 (D.N.J. Feb. 26, 2015) ............................................... 25

*Carr v. Flowers Foods, Inc.*,
  2019 WL 2027299 (E.D. Pa. May 7, 2019) ............................................. 25

*Dillworth v. Case Farms Processing, Inc.*,
  2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ........................................... 15

*Driver v. AppleIllinois, LLC*,
  917 F. Supp. 2d 793 (N.D. Ill. 2013) .................................................. 4

*Galt v. Eagleville Hosp.*,
  310 F. Supp. 3d 483 (E.D. Pa. 2018) ................................................. 19

*Garcia v. Palomino, Inc.*,
  738 F. Supp. 2d 1171 (D. Kan. 2010) .................................................. 5

*Garcia v. Tyson Foods, Inc.*,
  2012 WL 5985561 (D. Kan. Nov. 29, 2012) ........................................... 24

*Huffman v. Prudential Ins. Co. of Am.*,
  2018 WL 583046 (E.D. Pa. Jan. 29, 2018) ..................................... 22, 23, 24

*In re Baby Products Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ........................................................... 12

*In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................ 12

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  961 F. Supp. 2d 708 (E.D. Pa. 2014) .............................................. 11, 12

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ........................................................... 13

*In re Prudential Insurance Co. America Sales Practice Litig.*,
  148 F.3d 283 (3d Cir. 1998) ........................................................... 26

*In re Viropharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ............................................ 14

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ....................................................... 13, 24

*James v. Boyd Gaming Corp.*,
  2021 WL 794899 (D. Kan. Mar. 2, 2021)................................................................ 13
*Kauffman v. U-Haul Int'l, Inc.*,
  2019 WL 1785453 (E.D. Pa. Apr. 24, 2019) ...................................................... 15, 20
*Kloppel v. HomeDeliveryLink, Inc.*,
  2020 WL 2897014 (W.D.N.Y. June 3, 2020) ....................................................... 22
*Koenig v. Granite City Food & Brewery, Ltd.*,
  2017 WL 2061408 (W.D. Pa. May 11, 2017) ................................................... 22, 25
*Larson v. Isle of Capri Casinos, Inc.*,
  2018 WL 6495074 (W.D. Mo. Dec. 10, 2018) ...................................................... 13
*Lilley v. IOC-Kansas City, Inc.*,
  2019 WL 5847841 (W.D. Mo. Nov. 7, 2019)................................................... passim
*Lockett v. Pinnacle Entm't, Inc.*,
  408 F. Supp. 3d 1043 (W.D. Mo. 2019)............................................................... 6, 13
*McRobie v. Credit Prot. Ass'n*,
  2020 WL 6822970 (E.D. Pa. Nov. 20, 2020) ................................... 11, 12, 29, 30
*Mehling v. N.Y. Life Ins. Co.*,
  248 F.R.D. 455 (E.D. Pa. 2006) .......................................................................... 15
*Perez v. Lorraine Enterprises, Inc.*,
  769 F.3d 23 (1st Cir. 2014) ................................................................................... 4
*Perrin v. Papa John's Int'l, Inc.*,
  2013 WL 6885334 (E.D. Mo. Dec. 31, 2013)........................................................ 23
*Reyes v. Netdeposit, LLC*,
  802 F.3d 469 (3d Cir. 2015)................................................................................. 21
*Rouse v. Comcast Corp.*,
  2015 WL 1725721 (E.D. Pa. Apr. 15, 2015) ...................................................... 19
*Southwood v. Milestone Mgmt. PA-Feasterville, LLC*,
  2020 WL 5554396 (E.D. Pa. Sept. 15, 2020)........................................ 15, 16, 17, 19
*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001)................................................................................. 22
*Tompkins v. Farmers Ins. Exch.*,
  2017 WL 4284114 (E.D. Pa. Sept. 27, 2017).......................................................... 18
*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ......................................................................................... 24
*Wintjen v. Denny's, Inc.*,
  2021 WL 734230 (W.D. Pa. Feb. 25, 2021) ...................................................... 4, 5
*Yong Li v. Fam. Garden II, Inc.*,
  2019 WL 1296258 (E.D. Pa. Mar. 20, 2019)....................................................... 20, 21

Statutes

29 U.S.C. § 201 ......................................................................................................... 3
29 U.S.C. § 203(m)................................................................................................ 3, 5
29 U.S.C. § 203(t) ..................................................................................................... 3
29 U.S.C. § 206(a) ................................................................................................. 3, 5

Rules

Fed. R. Civ. P. 23 ..................................................................................... passim
Fed. R. Evid. 408 ......................................................................................... 13
Fed R. Civ. P. 1 ............................................................................................ 30

Regulations

29 C.F.R. § 516.28 .......................................................................................... 4
29 C.F.R. § 531.32 .......................................................................................... 6
29 C.F.R. § 531.35 .......................................................................................... 5
29 C.F.R. § 531.59 .......................................................................................... 4
34 Pa. Code § 231.22 ...................................................................................... 5
34 Pa. Code § 231.34 ...................................................................................... 4

Other Authorities

Newberg on Class Actions §4:69 ................................................................... 26

## INTRODUCTION

Plaintiff Bartakovits worked as a table games dealer (*i.e.*, a casino employee who deals games like blackjack, craps, and roulette) earning a sub-minimum wage plus tips at Defendant's Wind Creek casino in Bethlehem, Pennsylvania ("Wind Creek").  Plaintiff Bartakovits asserted class and collective action claims principally under the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA") related to two casino-wide, wage and hour practices at Wind Creek: (1) the failure to pay minimum wage due to improperly claiming a tip credit; and (2) the failure to pay minimum wage due to deductions from employees' wages for costs associated with Pennsylvania Gaming Control Board licenses.

After significant investigation, discovery, and an approximately 12-hour mediation with the Hon. Thomas J. Rueter (Ret.) of JAMS, Plaintiff Bartakovits and Wind Creek have now agreed on a class-wide resolution to these claims.  The Settlement Agreement provides for the creation of a $6,000,000 common fund (representing over 57% of the unpaid minimum wages alleged) to resolve the claims of 3,152 minimum wage employees at Wind Creek.  After deducting $36,518 for settlement administration, a $7,500 service award for Plaintiff Bartakovits, and one-third of the fund for Plaintiff's counsel's attorneys' fees and $8,855.55 for expenses, the average estimated Tip Credit Class settlement payment is over $2,088 and the average estimated Gaming License Class settlement payment is over $102.  Further, there is no claims process; class members will be automatically sent a check unless they ask to be excluded.  In exchange for their settlement payments, class members agree to an appropriately narrow release of claims tailored to the facts asserted in the complaint.  This is an outstanding result for the class.

Pursuant to Rule 23(e)(1), an order directing notice to the class is justified where the Court concludes it will likely be able to (1) approve the settlement as fair, reasonable, and adequate, and (2) certify the classes for purposes of settlement.  Accordingly, Plaintiff Bartakovits requests—

and Wind Creek does not oppose—that the Court permit the issuance of notice to the class of the proposed settlement, approve the form and manner of notice to the class, appoint Plaintiff's counsel as class counsel, appoint Analytics Consulting LLC to administer the class notice plan and to fulfill the duties of the Settlement Administrator as outlined in the Settlement Agreement, and schedule a final approval hearing to determine whether the Settlement should be finally approved. In addition, the Court can approve the release of FLSA claims for class members who negotiate their settlement checks because the settlement reflects a fair and reasonable resolution of a *bona fide* dispute. The Settlement Agreement and Notice packet are attached hereto as **Exhibits 1** and **2**, respectively. Plaintiff respectfully requests (and Wind Creek does not oppose) that the Court enter the parties' proposed order attached here to as **Exhibit 3**.

## SUMMARY OF THE LITIGATION

### I. The Nature of the Claims

Plaintiff Bartakovits worked as a table games dealer at the Wind Creek casino in Bethlehem, Pennsylvania between August 2018 and October 2019. *See* Class and Collective Action Complaint ("Compl."), Doc. 1 at ¶ 10. As a table games dealer, Plaintiff earned tips from casino patrons and was paid a sub-minimum wage of $4.25 per hour. *Id.* at ¶¶ 18, 41.

Plaintiff identified two casino-wide wage and hour policies that he alleged violated federal and Pennsylvania law: (1) Wind Creek had a policy of claiming a tip credit under federal and Pennsylvania law (*i.e.*, Wind Creek paid tipped employees less than the minimum wage and claimed a portion of their tips to offset their minimum wage obligations) but failed to satisfy the FLSA and PWMA's tip credit notice requirements; and (2) Wind Creek deducted costs associated with Pennsylvania Gaming Control Board licenses—which are essentially extensive background checks enabling people to perform work for Wind Creek—from the wages of employees earning

$7.25 per hour or less creating minimum wage violations and breaching agreements with employees. Compl. at ¶¶ 16-41.

Plaintiff Bartakovits filed his original complaint against Wind Creek on March 24, 2020. *See* Compl., Doc. 1. Plaintiff's original complaint asserted seven causes of action—all tied to either the tip credit notice or gaming license deduction issues—under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq*., the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq*., and breach of contract and unjust enrichment under Pennsylvania common law. *Id*. Plaintiff asserted these claims on behalf of classes and collectives of similarly situated employees earning near or below the minimum wage. *Id*. at ¶¶ 43-51; *see also* Hanson Decl. at ¶ 3.

## A.     The FLSA and PMWA's Tip Credit Notice Requirements

The FLSA provides that every employer shall pay covered employees a minimum hourly wage of no less than $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). Section 3(m) of the FLSA allows employers of tipped employees (*i.e.*, employees who customarily and regularly receive more than $30 a month in tips, *see* 29 U.S.C. § 203(t)), to pay a sub-minimum base hourly wage and claim a "tip credit" to make up the difference. *See* 29 U.S.C. § 203(m)(2). But, the FLSA only allows the tip credit to be claimed if, among other things, "such employee has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m)(2)(A)(ii). The notice requirements are:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, *i.e.:* The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips

actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b); *see also* 29 C.F.R. § 516.28(a)(3) ("The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week."). The PMWA tracks the FLSA's tip credit notice requirements with identical statutory provisions. *See* 43 P.S. § 333.103(d); 34 Pa. Code § 231.34.

It is not sufficient that employees simply and generally be aware of the FLSA and PMWA's tip credit provisions. Rather, Section 3(m) affirmatively requires employers to inform employees of the provisions contained in Section 3(m), as more fully described in 29 C.F.R. § 531.59(b). *See Acosta v. Mezcal, Inc.*, 2019 WL 2550660, at *7-8 (D. Md. June 20, 2019). The employer has the burden to prove compliance with the FLSA and PMWA's tip credit notice requirements. *See, e.g.*, *Driver v. AppleIllinois, LLC,* 917 F. Supp. 2d 793, 800 (N.D. Ill. 2013) ("The tip credit is an exception to an employer's minimum wage obligation, and the employer has the burden of establishing its entitlement to take it.").[1] If an employer has failed to meet any one of the five requirements set out in Section 3(m) (and further clarified in 29 C.F.R. § 531.59(b)), its notice is deficient as a matter of law. *See Wintjen v. Denny's, Inc*., 2021 WL 734230, at *4-6 (W.D. Pa. Feb. 25, 2021). Deficient notice renders an employer ineligible to claim the tip credit and liable for the difference between its tipped employees' sub-minimum base hourly wage and the federal

---

[1] *Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23, 27 (1st Cir. 2014) ("This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit. It is the employer's burden to show that it satisfied all the requirements for tip-credit eligibility.").

minimum wage. *See id.*; *see also Garcia v. Palomino, Inc.*, 738 F. Supp. 2d 1171, 1177–78 (D. Kan. 2010). Further, the minimum wage under both the FLSA and the PMWA is $7.25 per hour. *See* 29 U.S.C. 206(a)(1)(C) (providing for a $7.25 per hour minimum wage); 43 P.S. § 333.104(a.1) (stating that the PMWA matches the FLSA's minimum wage).

In this case, Wind Creek identified a variety of ways it claimed to provide notice of the FLSA and PMWA's tip credit requirements, including verbal notice from managers upon hiring and paystubs including the phrase "tip credit" with a dollar amount next to it. Plaintiff alleges these means are deficient, and that as a result, each class member is entitled to the difference between their direct cash wage and $7.25 per hour. *See* Hanson Decl. at ¶ 27.

### B.    The FLSA and PMWA's Wage Deduction Requirements

To meet the minimum wage, the FLSA permits an employer to be credited certain "board, lodging, or other facilities" as "wages." *See* 29 U.S.C. § 203(m)(1). This means an employer can deduct charges for "board, lodging, or other facilities" from an employee's wages without violating the FLSA's minimum wage requirements. However, these wages must be paid "free and clear" and cannot be "kickbacks" for "the employer's benefit." *See* 29 C.F.R. § 531.35. An FLSA violation occurs where an expense that primarily benefits the employer is deducted from an employee's wages and cuts into the minimum wage. 29 C.F.R. § 531.35. The PMWA tracks the "board, lodging, and other facilities" language of the FLSA and is interpreted consistent with the FLSA in this context. *See* 43 P.S. § 333.103; 34 Pa. Code § 231.22; *see also Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 258 (E.D. Pa. 2020) ("Because of the similarities between the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework.").

The FLSA's interpreting regulations define "other facilities" as "something like board or lodging." *See* 29 C.F.R. § 531.32. The line between an expense that primarily benefits the employee versus the employer is whether the expense arises as an ordinary living expense or through the employee's work for the employer. *See, e.g., Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1243 (11th Cir. 2002) ("By looking at items classified by the regulations as 'other facilities', it is apparent that the line is drawn based on whether the employment-related cost is a personal expense that would arise as a normal living expense."). Two district courts addressing the question have held that gaming licenses primarily benefit the employer and therefore the FLSA prohibits their deduction from wages where it would otherwise create a minimum wage violation.[2]

In this case, there is no dispute that Wind Creek has at all relevant times deducted the cost of Pennsylvania gaming licenses from its employees' wages. The issue is whether these licenses are primarily for the benefit of Wind Creek (as Plaintiff asserts) or the employees (as Wind Creek argues). This issue is particularly susceptible to class-wide resolution.

## II.     Procedural History of the Litigation

On May 11, 2020, Wind Creek filed a motion to dismiss pursuant to Rule 12(b)(6) arguing Plaintiff's WPCL, breach of contract, and unjust enrichment claims should be dismissed for failure to state a claim. *See* Doc. 19. In response, Plaintiff filed his First Amended Complaint ("FAC") on May 26, 2020 clarifying his contractual allegations and pleading the unjust enrichment claim

---

[2] *See Lockett v. Pinnacle Entm't, Inc.*, 408 F. Supp. 3d 1043, 1049 (W.D. Mo. 2019) ("The necessity of a gaming license arises out of employment, and therefore, it primarily benefits Defendants, as employers. Accordingly, the FLSA prohibits the deduction of any cost or fee for the gaming license."); *see also Lilley v. IOC-Kansas City, Inc.*, 2019 WL 5847841, at *3 (W.D. Mo. Nov. 7, 2019) (denying motion to dismiss and finding "the gaming license fee primarily benefits Defendant and, therefore, may not be deducted from wages to the extent the fee brings an employee's pay below the minimum wage required by the FLSA and [Missouri Minimum Wage Law].").

in the alternative, which mooted Wind Creek's motion to dismiss. Docs. 21, 22. On June 23, 2020, Wind Creek filed its Answer. Doc. 24; *see also* Hanson Decl. at ¶ 4.

Following Wind Creek's Answer, the parties conducted their Rule 26(f) conference on July 7, 2020 where the parties agreed to bifurcate discovery around the conditional and class certification issue. On July 29, 2020, the Court conducted a Rule 16 conference and adopted the parties' bifurcated discovery proposal (albeit with a shorter discovery period). *See* Docs. 26, 27; *see also* Hanson Decl. at ¶ 5.

The parties engaged in significant discovery. Plaintiff served interrogatories and requests for production of documents on July 10, 2020 while Wind Creek served interrogatories and requests for production of documents on July 31, 2020. And the parties engaged in a lengthy meet-and-confer process to resolve discovery disputes. Wind Creek produced Plaintiff Bartakovits' personnel file, the casino's employee guideline documents, policy and procedure documents regarding wage and hour issues, payroll records, training materials, gaming license documents exchanged with the Pennsylvania Gaming Control Board, corporate structure documents, and documents regarding insurance coverage. Hanson Decl. at ¶¶ 6-8.

Once the parties had completed written discovery, Plaintiff noticed and prepared for a Rule 30(b)(6) deposition of Wind Creek targeting key issues surrounding tip credit notice and gaming license wage deductions, which was scheduled for December 18, 2020. The parties exchanged meet-and-confer correspondence regarding the appropriate scope of this deposition. Likewise, Wind Creek was scheduled to depose Mr. Bartakovits that same week. Plaintiff's motion for conditional and class certification was due on January 8, 2020. Doc. 30. The case progress and the looming certification deadline resulted in the parties' agreement to mediate. Hanson Decl. at ¶¶ 9-10.

### III.    The Parties Engaged in Arm's Length Settlement Negotiations

Plaintiff first inquired with Wind Creek regarding settlement in a letter dated July 27, 2020 wherein Plaintiff described a possible settlement structure, identified the data necessary to evaluate class-wide damages, and suggested mediators.  Following significant discovery and as the parties were preparing for Wind Creek's and the Plaintiff's depositions, the parties agreed mediation would be productive.  The parties entered into a tolling agreement to stop the running of the statute of limitations period on the FLSA claims, identified the wage and hour information necessary to mediate, and proposed potential mediators. Hanson Decl. at ¶ 11.

The parties agreed to mediate before retired U.S. Magistrate Judge Thomas J. Rueter on December 7, 2020.  Wind Creek provided Plaintiff with class-wide wage and hour information to determine damages, and the parties extensively briefed their positions on liability, class and conditional certification, and damages to Judge Rueter.  In fact, Plaintiff analyzed nearly 100,000 individual payroll records for 3,151 class members to calculate class-wide damages for the tip credit and gaming license claims.  On December 7, 2020, the parties mediated with Judge Rueter for approximately 12 hours ultimately agreeing to a class action settlement. Hanson Decl. at ¶¶ 12-13.

### SUMMARY OF KEY SETTLEMENT TERMS

### I.    The Settlement Classes

Plaintiff asks the Court to certify two settlement classes of employees at Wind Creek Bethlehem (*see* Ex. 1, Settlement Agreement at ¶ 1):

**The Tip Credit Class**: All hourly, tipped employees earning a cash wage of $7.24 or less between March 24, 2017 and December 8, 2020.

**The Gaming License Class**: All hourly, tipped employee earning a cash wage of $7.25 or less between March 24, 2017 and December 8, 2020 who had a gaming license fee deducted from their wages.

These two classes are comprised of a total of 3,151 unique employees. Hanson Decl. at ¶¶ 21-22 . There are 1,758 Tip Credit Class members and 2,686 Gaming License Class members with 1,292 employees being members of both classes. *Id*.

## II. The Settlement Benefits

The settlement creates a $6,000,000 common fund to pay class members, the cost of settlement administration, a service award to Plaintiff Bartakovits, and Plaintiff's counsel's attorneys' fees and expenses. Ex. 1, Settlement Agreement. at ¶ 7. Based on Plaintiff's counsel's damages calculations, the $6,000,000 common fund represents over 57% of the unpaid minimum wages alleged in the operative complaint. Hanson Declaration at ¶ 23. The net fund (less the costs described above) will be allocated 93% to the Tip Credit Class and 7% to the Gaming License Class, which tracks the approximate distribution of damages between the tip credit claims and the gaming license claims. Ex. 1, Settlement Agreement, at ¶ 11.

With respect to the Tip Credit Class, each class member will receive their *pro rata* share of the Tip Credit Class allocation based on the number of workweeks they worked at Wind Creek while earning $7.24 per hour or less (*i.e.*, work for which Wind Creek claimed a tip credit) between March 24, 2017 and December 8, 2020 versus the total number of such workweeks. *Id*. With respect to the Gaming License Class, each class member will receive their *pro rata* share of the Gaming License Class allocation based on the total value of costs associated with gaming licenses deducted from their wages while earning $7.25 per hour or less between March 24, 2017 and December 8, 2020 versus the total value of such costs. *Id*.

Plaintiff's counsel estimates that, after accounting for the cost of settlement administration, a service award, and Plaintiff's counsel's fees and expenses, the average estimated Tip Credit Class settlement payment will be $2,088 and the average estimated Gaming License Class settlement

payment will be $102. Hanson Decl. at ¶ 25.  However, in no event will a class member receive less than $100. Ex. 1, Settlement Agreement at ¶ 11.

III.    **Proposed Notice Program, Settlement Structure, and Release**

Within 45 days of the Court's Order preliminarily approving the settlement, Analytics Consulting LLC will send the Notice (*see* **Exhibit 2**) to each class member. Ex. 1, Settlement Agreement at ¶ 40.  The Notice explains in clear and easy to understand language the settlement structure, the settlement amount, the requested attorneys' fees, the requested service award, the scope of the release, and the class member's options to participate, object, or request to be excluded. *See* Ex. 2, Notice.  The proposed Notice includes an Information Verification Form and Request for Exclusion Form.  The Information Verification Form informs each class member of their estimated settlement allocation for both the Tip Credit Class and Gaming License Class as well as the method of allocation. *Id*.  The proposed notice also explains how to opt out of or object to the settlement. *Id*.  Class members may opt out of the settlement by returning the Request for Exclusion Form to the Settlement Administrator within 45 days of the mailing of the Notice.  *See* Ex. 1, Settlement Agreement at ¶ 42.  Likewise, class members may object to the settlement by preparing a written objection as to why the settlement is not fair or reasonable and mailing a copy to Analytics Consulting LLC within 45 days of the mailing of the Notice. *See* Ex. 2, Notice.

To participate in the settlement, class members do not need to do anything—there is no claims process. *See* Ex. 1, Settlement Agreement at ¶ 48.  Class members who *do not* request to be excluded from the settlement will receive a check in the mail for their settlement allocation. *Id*. Class members who negotiate their checks will release all federal and Pennsylvania claims that that were or could have been asserted based on the facts alleged in the Complaint (as more fully explained in the Settlement Agreement (Ex. 1) and Notice (Ex. 2)). *Id*. at ¶¶ 12, 31-32.  Class members who do not negotiate their checks will still be deemed to have released the Pennsylvania

claims *but not* the federal claims. *Id.* Thus, class members who choose not to negotiate their settlement checks will not have released their FLSA claims. Within 180 days from the mailing of checks, the balance of any uncashed checks will be paid to Wind Creek. *Id.* at ¶ 50.

## IV. Service Awards, Attorneys' Fees and Costs

The Settlement Agreement provides for a $7,500 service award for Plaintiff Bartakovits to be paid from the settlement fund subject to the Court's approval. *See id.* at ¶ 26. In addition and also subject to approval by the Court, the settlement fund will be used to pay Plaintiff's counsel's attorneys' fees and expenses. *Id.* at ¶ 29. Prior to the deadline for class members to object or opt out of the settlement, Plaintiff's counsel will file a motion for attorneys' fees not to exceed one-third of the common fund ($2,000,000) and reasonable expenses of $8,855.55, which will be posted on the settlement website. *Id.*[3]

**ARGUMENT**

## I. Standard of Review for Preliminary Approval of a Class Action Settlement

"Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation." *McRobie v. Credit Prot. Ass'n*, 2020 WL 6822970, at *2 (E.D. Pa. Nov. 20, 2020) (Leeson, J.) (quoting *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014)). "Only if the proposed settlement is found to be preliminarily acceptable does a court direct notice to all class members who would be bound by

---

[3] The Settlement Agreement provides that Plaintiff's counsel could seek up to 35% of the common fund for attorneys' fees plus reasonable expenses. Ex. 1, Settlement Agreement at ¶ 29. However, Plaintiff's counsel will limit their request for attorneys' fees to 33.33% of the common fund plus reasonable expenses of $8,855.55. This comports Plaintiff's counsel's request for attorneys' fees and expenses with the Third Circuit's one-third benchmark for awarding attorneys' fees on a percentage of the fund basis. This results in $100,000 (slightly less than 2% of the settlement fund) being redistributed to settlement class members. *See id.* at ¶ 11; *see also* Hanson Decl. at ¶ 19.

the settlement, so that they may have an opportunity to be heard, object to, and potentially opt out of the settlement." *Id.*

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the class of a settlement upon determining that notice is justified because the Court concludes it is more likely than not to finally approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a settlement, a court should consider whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal; how the relief will be distributed; the terms governing attorneys' fees; and any side agreements; and (4) whether class members are treated equitably relative to each other. *Id.*

The goal of the Court's inquiry at the preliminary approval stage is determine whether a proposed settlement is fair and likely to be approved. *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) ("The role of a district court is not to determine whether the settlement is the fairest possible resolution... The Court must determine whether the compromises reflected in the settlement… are fair, reasonable, and adequate when considered from the perspective of the class as a whole.). And, where the negotiated resolution is fair, reasonable, and adequate, the Third Circuit favors settlement over protracted litigation. *In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Plaintiff respectfully submits that this settlement meets (and exceeds) the requirements for preliminary approval, certification of the settlement classes, and issuance of notice.

## II. The Proposed Settlement is Fair, Reasonable, and Adequate

Pursuant to Rule 23(e)(1)(B)(i), the Court may preliminarily approve a class action settlement if it "will likely be able to approve the proposal under Rule 23(e)(2)" which entails reviewing four enumerated factors. Plaintiff addresses each factor in turn.

### A. Class Counsel Has Adequately Represented the Class

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (class counsel should have "adequate appreciation of the merits of the case before negotiating").

In this case, the adequacy factor is satisfied. First, Plaintiff's counsel have devoted much of their practice over the last five years to prosecuting wage and hour claims against casino operators having collectively prosecuted over 20 such cases. Because of this experience, Plaintiff's counsel have a deep knowledge of wage and hour practices in this industry, the type of evidence that typically exists, and how to value these claims. Hanson Decl. at ¶ 28. In fact, Plaintiff's counsel have obtained key rulings relevant to the claims in this case.[4] Second, through discovery and data produced pursuant to Federal Rule of Evidence 408, Plaintiff's counsel have all of the information necessary to evaluate the merits of the claims, including: Wind Creek's

---

[4] *See, e.g., Lockett,* 408 F. Supp. 3d 1043, 1049 (finding gaming licenses primarily benefit casino employers); *Lilley*, 2019 WL 5847841, at *3 (same); *Larson v. Isle of Capri Casinos, Inc.*, 2018 WL 6495074, at *17 (W.D. Mo. Dec. 10, 2018) (granting conditional and class certification of casino-wide tip credit notice and timeclock rounding claims); *James v. Boyd Gaming Corp.*, 2021 WL 794899, at *1 (D. Kan. Mar. 2, 2021) (granting conditional certification of tip credit notice and tip pooling claim across 13 casino properties).

contention as to how it claimed it provided notice of the FLSA and PMWA's tip credit requirements and all supporting evidence, evidence regarding how Wind Creek deducted gaming license costs from its employees' wages, and the casino-wide wage and hour data to calculate class-wide damages to the penny (which entailed reviewing nearly 100,000 individual payroll records for over 3,100 class members). Hanson Decl. at ¶ 12. Third and most importantly, Plaintiff's counsel believe the relevant metrics show that this settlement is an excellent recovery for class members. Net of all fees and costs, Tip Credit Class members are estimated to receive on average over $2,088 while Gaming License Class members are estimated to receive on average over $102, both of which represent over 57% of the unpaid minimum wages alleged. *Id*. at ¶¶ 23-25. The Court can find that the classes have been adequately represented.

### B. The Settlement Was Negotiated at Arm's Length

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e), Advisory Committee Notes. Here, this factor is likely to be satisfied because the settlement was achieved through arm's-length negotiations culminating in a nearly 12-hour mediation session overseen by former United States Magistrate Judge Rueter. Hanson Decl. at ¶ 13; *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (noting that "participation of an independent mediator … virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties") (internal quotations omitted).

### C. The Relief Provided to the Class is Adequate

Rule 23(e) charges the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-

member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

In this case, there is no doubt these factors point towards settlement approval. All of the factors identified by Rule 23(e)(2)(C) should be viewed in light of the meaningful monetary benefit this settlement confers on class members and the fact that class members will be mailed a check without the need to participate in a claims process. Based on class-wide wage and hour data, Plaintiff calculated class-wide unpaid minimum wages of $10,499,532.50 (including $9,805,163 for the tip credit claims and $694,369.50 for the gaming license claims). The $6,000,000 common fund represents over 57% of the unpaid minimum wages at issue. Likewise, the average class member payments—net of all fees, service awards, and administration costs—are estimated to be over $2,088 (Tip Credit Class) and over $102 (Gaming License Class). That is a significant recovery in any wage case (and class actions generally).[5]

Further, both the percentage of minimum wages recovered, the size of the common fund, and the amount of the individual payments compare favorably to settlements of other tip credit notice claims. For example, in a recent case in the Western District of Pennsylvania, the district

---

[5] *See, e.g., Kauffman v. U-Haul Int'l, Inc.*, 2019 WL 1785453, at *3 (E.D. Pa. Apr. 24, 2019) (Leeson, J.) (approving wage and hour settlement where "Plaintiff will receive payment of a meaningful portion (approximately 28%) of his alleged unpaid overtime wages..."); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2006) (approving settlement that represented 20% of best possible recovery and noting courts that have approved settlements with even lower ratios); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010); (approving a class action settlement that recovered "approximately one-third of claimed unpaid wages" and finding "there can be no doubt that the results achieved for the class members are exceptional."); *Southwood v. Milestone Mgmt. PA-Feasterville, LLC*, No. CV 19-2569, 2020 WL 5554396, at *4 (E.D. Pa. Sept. 15, 2020) (approving FLSA and PMWA settlement for "54% of the amount Plaintiff claims to be owed" and finding this to be a "positive result.").

court approved a class action settlement of FLSA and PMWA tip credit notice claims similar to those at issue in this case. *See Koenig v. Granite City Food & Brewery, LTD, et al.*, Case No. 2:16CV01396, Doc. 125 (W.D. Pa. March 28, 2018). The *Koenig* settlement provided for a $305,000 common fund representing 41.7% of the unpaid minimum wages at issue and provided for a $703.37 average payment. *Id.* at ¶¶ 10, 14. By any metric, the relief in this case—$6,000,000 common fund, over 57% of unpaid minimum wages recovered, and $2,088 estimated average settlement payment—compares favorably to the relief in *Koenig* and other tip credit notice cases.[6]

### 1. The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal.

Considering the costs, risks, and delay of trial and appeal, the proposed settlement satisfies Rule 23(e)(2)(C)(i). As noted above, the settlement confers a significant monetary payment on class members representing 57% of their alleged unpaid wages and provides estimated average payments of over $2,088 (Tip Credit Class) and over $102 (Gaming License Class) per class member. This would be an excellent recovery in any wage and hour case, but it is particularly so when weighed against the procedural and substantive risks in the case.

Procedurally, the settlement provides a class-wide recovery immediately with no risks associated with obtaining and maintaining class and conditional certification. Although Plaintiff is confident his claims should be granted both conditional and class certification, that result is not

---

[6] *See, e.g.*, *Cope v. Let's Eat Out, Inc.*, Case No. 6:16-cv-03050-SRB, Doc. 316 at *12 (W.D. Mo. April 17, 2019) (motion for preliminary approval of class action settlement creating $650,000 common fund to resolve tip credit notice (and other unpaid wages claims) and noting "the settlement provides Opt-in Plaintiffs with 25% of their owed minimum wages."); *see id.* at Doc. 325 (W.D. Mo. Sept. 6, 2019) (granting final approval of settlement); *see also Black v. P.F. Chang's China Bistro, Inc.*, Case No. 16-CV-3958, Doc. 92 at *7 n. (N.D. Ill. May 15, 2017) (motion for final approval of class action settlement creating a $2,650,000 common fund to resolve tip credit notice claim (and other unpaid wage claims impacting the tip credit) representing 35.5% of the value of the case and providing an average payment of $608.45 to class members and $715 to opt-in plaintiffs); *see id.* at Doc. 103 at ¶ 4 (granting final approval of settlement).

guaranteed. And to obtain this result at trial would require not only obtaining conditional and class certification but also defeating motions for decertification.

With respect to the merits, Plaintiff is confident in the merits of both the tip credit and gaming license deduction claims. However, Wind Creek is not without defenses. For example, with respect to the tip credit claims, Wind Creek argued it provided verbal notice of the FLSA's tip credit requirements and is the only casino operator Plaintiff's counsel is aware of to include a line item in each employee's paystub that stated "Tip Credit" and included an amount next to it. Hanson Decl. at ¶ 27. Though Plaintiff disputed whether Wind Creek provided adequate verbal notice to employees and challenged the sufficiency of the pay stub notation, these arguments are nonetheless defenses (including one unique to this case) that a jury would be permitted to consider. *Id*. As to the gaming license claim, there is a risk that the Court at summary judgment or a jury at trial could determine that the gaming licenses primarily benefitted the employees as opposed to their employer—a "silver bullet" defense that would defeat the claims in their entirety. Though two district courts in the Eighth Circuit have found otherwise (*see Lockett* and *Lilley*, discussed *supra*), those decisions are not binding on this Court (or the Third Circuit on any appeal).

Moreover, to obtain benefits exceeding those provided by the proposed settlement, Plaintiff would be required to obtain conditional and class certification, defeat motions for class and collective decertification, defeat motions for summary judgment, prevail at trial, and prevail on appeal. This process would be both long (particularly considering the backlog of trials due to the pandemic) and costly. Further, if Plaintiff lost any issue at any stage, the class would recover *nothing*. This factor weighs in favor of settlement approval.

2.    **The relief provided to the class is adequate considering the effectiveness of distributing relief to the class**.

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. In this case, class members are not required to file any claim forms or take any affirmative steps to receive a settlement payment. Instead, unless class members request to be excluded, they will automatically be sent a check for their settlement amount. *See* Ex. 1, Settlement Agreement at ¶ 48. Moreover, every individual covered by the settlement will receive an individualized notice form that explains the settlement and specifies his or her anticipated settlement payment amount. *See* Ex. 2, Notice. This factor is likely to be satisfied and weighs in favor of settlement approval.

3.    **The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees**.

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes. In this case, Plaintiff will petition the Court for an award of attorneys' fees of up to one-third of the common fund ($2,000,000) plus reasonable expenses of $8,855.55. *See* Ex. 1, Settlement Agreement at ¶ 29.

At the final approval stage, Plaintiff will fully brief the fairness and reasonableness of the requested attorneys' fees under the Third Circuit's *Gunter* and *Prudential* factors. *Tompkins v. Farmers Ins. Exch.*, 2017 WL 4284114, at *9-10 (E.D. Pa. Sept. 27, 2017) (Leeson, J.) (describing factors). In the meantime, preliminary approval is warranted because, as this Court has observed, a 33.33% fee recovery is the "benchmark" in wage and hour cases. *Id*. In fact, courts in the Eastern District of Pennsylvania have frequently awarded higher percentages than the one-third Plaintiff's

counsel seeks.[7]  This factor is likely to be satisfied and weighs in favor of settlement approval.

**4.    The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e).**

The only agreement between the parties is the Settlement Agreement. *See* Hanson Decl. at

¶ 14.  This factor is likely to be satisfied and weighs in favor of settlement approval.

**D.    The Settlement Treats Class Members Equitably to One Another**

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others."  Advisory Committee Notes.  In this case, Plaintiff's counsel worked diligently to create an allocation formula that recognizes the differences between the Tip Credit Class and the Gaming License Class regardless of the significant overlap in class membership.  Specifically, as part of the mediation process, Plaintiff's counsel calculated the class-wide damages for both the Tip Credit Class and the Gaming License Class. The Settlement Agreement allocates the $6,000,000 common fund to the Tip Credit Class (93%) and the Gaming License Class (7%) in proportion with the class-wide damages attributable to each claim. Hanson Decl. at ¶¶ 22-25 .  Further, the Tip Credit Class allocation formula is based on each class member's proportional share of workweeks at a sub-minimum wage rate while the Gaming License Class allocation formula is based on each class member's proportional amount of wage deductions. Ex. 1, Settlement Agreement at ¶ 11.  This factor is likely to be satisfied and weighs in favor of settlement approval.

---

[7] *See, e.g.*, *Rouse v. Comcast Corp.*, 2015 WL 1725721, at *12 (E.D. Pa. Apr. 15, 2015) (in wage and hour case, "Class Counsel's requested fee award represents approximately 35% of the common fund created by the Settlement Agreement . . . This at the high end of the range; however, it is consistent with fee awards approved in this Circuit and in the country for similar wage and hour cases."); *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018) (in wage and hour case, granting fee award of "approximately 35% of the common fund"); *Southwood v. Milestone Mgmt. PA-Feasterville, LLC*, 2020 WL 5554396, at *5 (E.D. Pa. Sept. 15, 2020) (in wage and hour case, awarding "fee in the amount of 35% of the settlement amount").

## IV. The FLSA Release Should Be Approved as a Fair and Reasonable Resolution of a Bona Fide Dispute

For the same reasons that the settlement is fair, reasonable, and adequate under Rule 23(e)(1), the settlement likewise is a fair and reasonable resolution of a *bona fide* dispute such that the Court can approve the FLSA release for class members who negotiate their settlement checks. As this Court has noted regarding the standard for approving a release of FLSA claims:

> A proposed settlement resolves a bona fide dispute when it reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, rather than a mere waiver of statutory rights brought about by an employer's overreaching. In determining whether a compromise is fair and reasonable, courts in this Circuit consider both: (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA.

*See Yong Li v. Fam. Garden II, Inc.*, 2019 WL 1296258, at *2 (E.D. Pa. Mar. 20, 2019) (Leeson, J.) (internal citations and quotations omitted).

In this case, the parties vigorously disputed whether Wind Creek provided adequate notice of the FLSA's tip credit requirements and whether the gaming license costs deducted from employees' wages primarily benefitted the casino or the workers. *See* Wind Creek's Answer, Doc. 24 at Affirmative Defenses ¶¶ 1-15. The Court can conclude this litigation involved a *bona fide* dispute of FLSA liability. *See Yong Li,* 2019 WL 1296258 at *2 (noting a *bona fide* dispute existed where defendants denied they violated the FLSA). Further, the recovery of 57% of unpaid minimum wages for both the Tip Credit Class and Gaming License Class represents a fair and reasonable compromise of legitimately disputed liability under the FLSA. *See Kauffman v. U-Haul Int'l, Inc.*, 2019 WL 1785453, at *3 (E.D. Pa. Apr. 24, 2019) (Leeson, J.) (approving FLSA settlement where plaintiff recovered 28% of alleged unpaid overtime and referring to settlement as "payment of a meaningful portion… of his alleged unpaid overtime wages"). Lastly, the release of claims in this case is narrowly tailored to the facts asserted in the First Amended Complaint,

which were the subject of discovery and investigation prior to mediation and there is no confidentiality provision. *See Yong Li,* 2019 WL 1296258 at *3 (holding appropriately narrow release meant the settlement did not frustrate the purpose of the FLSA). Further, only those class members who sign and negotiate their settlement checks thereby evidencing their intent to participate will release their FLSA claims. *See* Ex. 1, Settlement Agreement at ¶¶ 30-32. The release of FLSA claims under these circumstances is a fair and reasonable resolution of a *bona fide* dispute.

## V.      Class Certification for Settlement Purposes is Warranted

Having determined that the Court "will likely be able to … approve the proposal under Rule 23(e)(2)," the Court can turn to the second half of the preliminary approval inquiry: whether the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii). As discussed in more detail above, Plaintiff will ask the Court to certify the Tip Credit Class and the Gaming License Class for settlement purposes.

To obtain class certification, Plaintiff must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). In addition, Plaintiff must satisfy Rule 23(b)(3)'s two additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff is likely to satisfy these requirements here.

### A.      Numerosity is Likely to be Satisfied

The numerosity inquiry tests whether joinder of all class members in a single proceeding would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). As this Court has observed, although there

is no "magic number" for numerosity, where the "number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Huffman v. Prudential Ins. Co. of Am.*, 2018 WL 583046, at *8 (E.D. Pa. Jan. 29, 2018) (Leeson, J.) (finding numerosity satisfied with 1,000 class members) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). In this case, there are 3,152 unique employees covered by the settlement. There are 1,758 employees in the Tip Credit Class and 2,686 employees in the Gaming License Class. Joinder of that number of individuals is impracticable, and numerosity is likely to be satisfied.

### B.      Commonality is Likely to be Satisfied

As this Court has held, commonality "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Huffman*, 2018 WL 583046, at *8 (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). And this requirement is "easily met." *Id*.

In this case, the Tip Credit Class shares common legal and factual issue of whether Wind Creek's casino-wide methods of providing tip credit notice satisfied the PMWA's requirements. *See Koenig v. Granite City Food & Brewery, Ltd.*, 2017 WL 2061408, at *4 (W.D. Pa. May 11, 2017) (certifying PMWA tip credit notice class and finding "commonality requirement is satisfied because [the defendant] used standardized policies to notify tipped employees of the tip credit and standardized procedures to calculate their tip credit for payroll evidencing tipped employees sharing common factual allegations and legal theories for recovery.").

Likewise, the Gaming License Class shares the common question of whether the gaming license expenses being deducted from class members' wages primarily benefit the employer or the employees. *See e.g., Kloppel v. HomeDeliveryLink, Inc.,* No. 17-CV-6296-FPG, 2020 WL 2897014, at *7 (W.D.N.Y. June 3, 2020) ("[Defendant's] uniform policy of . . . making allegedly

unlawful deductions from [its employees'] compensation can be established by common proof"); *Perrin v. Papa John's Int'l, Inc.*, 2013 WL 6885334, at *7 (E.D. Mo. Dec. 31, 2013) (certifying Rule 23 class actions under five states' minimum wage statutes where vehicle expenses were creating minimum wage violations for delivery drivers and determining the predominant question was whether "Defendants' vehicle reimbursement policy does not reasonably approximate Plaintiffs' vehicle expenses."). Commonality is likely to be satisfied.

### C.      Typicality is Likely to be Satisfied

The typicality requirement is meant to ensure that the named plaintiff's claims and theories of liability are typical of the classes he or she seeks to represent. *Huffman*, 2018 WL 583046, at *9 ("The Third Circuit has noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.") (internal quotations omitted).

In this case, Plaintiff Bartakovits—like each member of the Tip Credit Class—was a sub-minimum wage employee at Wind Creek who was paid pursuant to the tip credit minimum wage exception and challenges the applicability of that exception for failure to give notice of the PMWA and FLSA's tip credit provisions (which are the same for all class members). Similarly, Plaintiff Bartakovits—like each member of the Gaming License Class—was an employee at Wind Creek earning $7.25 per hour or less who had the cost of a gaming license deducted from his wages thereby creating a minimum wage violation. Typicality is likely to be satisfied.

### D.      Adequacy is Likely to be Satisfied

Rule 23(a)(4)'s adequacy requirement will be satisfied "if (1) the interests of the class representative do not conflict with the class members' interests and (2) class counsel are

experienced, vigorously prosecuted the action, and acted at arm's length from the defendant." *See Huffman*, 2018 WL 583046, at *9 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)).

In this case, there are no conflicts of interest between Plaintiff Bartakovits and either the Tip Credit Class or the Gaming License Class. Plaintiff is a member of both classes and has been incentivized to maximize recovery for both, which he has done. Likewise, Plaintiff Bartakovits has engaged counsel who have collectively prosecuted over 20 class and collective actions against casino operators for the same or similar wage and hour claims. *See* Hanson Decl. at ¶ 28. In addition, Plaintiff's counsel are among the most experienced wage and hour and class action lawyers in the country. Hanson Decl. at ¶¶ 29-34. As Judge Marten of the District of Kansas noted regarding Stueve Siegel Hanson following a successful verdict on behalf of a certified class, "it appears that plaintiffs' counsel's experience in wage-hour class actions has unmatched depth." *Garcia v. Tyson Foods, Inc.*, 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014); *see* Ex. 4, Stueve Siegel Hanson LLP Firm Resume. Adequacy is likely to be satisfied.

### E.        Predominance is Likely to be Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Supreme Court recently summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations omitted).

Here, predominance is satisfied because the success or failure of Plaintiff's challenge to Wind Creek's common use of the tip credit without an adequate tip credit notice policy and Wind Creek's common practice of deducting fees associated with gaming licenses from employees' wages will require the Court to apply common legal principles to common facts. Other district courts have found predominance satisfied in tip credit notice class actions. *See Koenig*, 2017 WL 2061408, at *5 (certifying PMWA tip credit notice class action and finding "the predominant questions of fact and law for the class relate to how [defendant] notified tipped employees of the tip credit and calculated all tipped employees' minimum wage. We find predominance is satisfied because [defendant] used the same policies and procedures for all tipped employees and they share the same cause of action under Pennsylvania's Minimum Wage Act."). So too for wage deduction classes. *See*, *e.g.*, *Carr v. Flowers Foods, Inc.*, No. CV 15-6391, 2019 WL 2027299, at *17 (E.D. Pa. May 7, 2019) ("because the same categories of deductions were routinely made by Defendants and subjected to the same treatment in the standard written agreements between the parties, the validity of those deductions will hinge on common questions of law—namely, whether particular categories of deductions were proper under the PWPCL's implementing regulations or other authorization from the Department of Labor and Industry. As a result, whether these categories were permissible under the PWPCL is susceptible to class-wide proof."); *Bouder v. Prudential Fin., Inc.*, No. CIV.A. 2:06-043 59, 2015 WL 857655, at *8 (D.N.J. Feb. 26, 2015) ("the determination of whether Defendants violated state laws does not depend on the specific deductions made to each Class Members' earnings" and thus "Plaintiffs have met the predominance requirement of Rule 23(b)(3) for the New York and Pennsylvania Deductions Subclasses."). Predominance is likely to be satisfied.

**F.      Superiority is Likely to be Satisfied**

Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," *In re Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," *id.* at 315.  As discussed below, these factors favor class certification:

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions."  This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts.  *See* Newberg on Class Actions §4:69. This is not such a lawsuit.  Here, the average settlement payments are over $2,000 and $100 and, though undoubtedly material to class members, damages at this level are best and most efficiently prosecuted through representative litigation.  Further, this case does not involve personal injuries or other emotionally charged issues.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members.  This factor is not relevant because no related litigation exists.  In fact, 20 class members have opted into this case prior to distribution of notice, which indicates class members prefer to participate in a representative action.

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  Here, concentration of all claims in this Court is both efficient and desirable because all of the class members worked at

Wind Creek casino in Bethlehem, Pennsylvania inside this judicial district.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This requirement is automatically satisfied when a case is certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248 (1997). Superiority is therefore likely to be satisfied.

## IV. The Proposed Class Notice Satisfies Rule 23

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.* Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

Here, all of the above requirements are satisfied. Pursuant to the Settlement Agreement, Analytics Consulting LLC, an experienced third-party settlement administrator, will be provided with name, last known address, Social Security Number, and date of birth of each class member. *See* Ex. 1, Settlement Agreement, at ¶¶ 37-40. The administrator will mail to each class member a packet containing the notice form for his/her respective group. *Id.; see also* Ex. 2, Notice. If the post office returns any package to the administrator with a forwarding address, the administrator

will promptly re-mail the packet to the forwarding address. *Id.* If the post office returns any packet to the administrator without a forwarding address, the administrator will work diligently to obtain an updated address and will promptly mail the package to any updated address. *Id.* Individuals will have 45 days from the mailing of the Notice to exclude themselves from or object to the settlement. Ex. 2, Notice.

Moreover, the notice forms are written in clear language and accurately describe the nature of the action, the settlement, the scope of the release, and the process class members must follow to exclude themselves from or object to the settlement. *Id.* Importantly, each notice packet includes an individualized page informing class members of their anticipated award and an explanation of how it was calculated. *Id.* This detailed notice weighs in favor of settlement approval. Likewise, class members can find more information about the claims in the case and the settlement (including reviewing the Settlement Agreement) on the settlement website.

## V. The Court Should Appoint Plaintiff's Counsel as Class Counsel

When, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3). Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *See* Fed. R. Civ. P. 23(g)(1).

Here, Stueve Siegel Hanson LLP, McClelland Law Firm, P.C., and Weisberg Cummings, P.C. respectfully ask the Court to appoint them interim class counsel. Each firm is comprised of experienced wage and hour and class action lawyers. Further, Stueve Siegel Hanson has been appointed class counsel in many class actions, including many wage and hour class actions. *See* Hanson Decl. at ¶¶ 29-34; *see also* Ex. 4, Stueve Siegel Hanson Firm Resume.

## VI. The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines

In connection with the preliminary approval of the settlement, Plaintiffs propose that the Court adopt the following schedule, which is set forth in the accompanying proposed order:

| Event | Timing |
|---|---|
| Deadline for Wind Creek to disseminate CAFA notices | [10 days from the filing of this motion] |
| Deadline for Defendant to provide class list (including names, addresses, SSNs, DOBs, and wage information—as described in Par. 37 of the Settlement Agreement) to Analytics | [14 days after order directing notice and preliminarily approving settlement] |
| Deadline for Analytics to provide parties with file showing class members' settlement allocations | [30 days after order directing notice and preliminarily approving settlement] |
| Deadline for Analytics to mail Notice packets | [45 days following order directing notice and preliminarily approving settlement] |
| Deadline for Class Counsel to file motion for attorneys' fees, costs, expenses and service awards | [21 days before objection and opt-out deadline] |
| Objection deadline | [45 days after notice deadline] |
| Opt-out deadline | [45 days after notice deadline] |
| Deadline for Plaintiffs' Counsel to file motion for final approval of settlement and responses to any timely submitted Class member objections, which shall include a declaration from the Settlement Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all Settlement Class Members who submitted timely requests for exclusion | [21 days prior to Final Approval hearing] |
| Final Approval Hearing | No earlier than 120 days after entry of the Preliminary Approval Order |

Plaintiff is aware that in the *McRobie v. Credit Prot. Ass'n* case, the Court postponed scheduling a final fairness hearing given the ongoing COVID-19 pandemic. 2020 WL 6822970, at *5 n.6. In this case, Plaintiff respectfully requests the Court schedule the final fairness hearing

for a remote proceeding. The parties can provide a link to these proceedings on the settlement website for any class member who wishes to be heard. Plaintiff believes this is the proper course of action for three reasons.

First, though Rule 23 requires the Court to hold a hearing on final settlement approval, that hearing need not be in person. *See* Fed. R. Civ. P. 23(e)(2). To the extent a class member seeks to appear at the hearing to provide evidence or argument, that can be accommodated through a remote hearing and providing a link to the proceedings on the settlement website. Setting the final fairness hearing for a remote proceeding is consistent with the Court's discretion to manage the approval process. *See* 4 Newberg on Class Actions § 13:42 (5th ed.) ("The trial court's discretion in establishing the contours of the fairness hearing is in line with the generally high degree of discretion the court enjoys under Rule 23(e).").

Second, scheduling the final fairness hearing is the catalyst to getting money into the hands of class members. Although this is true of any class action, it has special significance in the middle of the pandemic and particularly in this case where class members are, by definition, earning at or below $7.25 per hour. To put it in practical terms, the average $2,000+ settlement check to Tip Credit Class members represents wages (without tips) for at least six weeks of 40-hour per week work. These are meaningful amounts at a difficult time and should be distributed quickly.

Third, scheduling the final fairness hearing furthers the purpose of Rule 1 and Rule 23 to resolve claims quickly and efficiently. *See* Fed. R. Civ. P. 1 (The Federal Rule of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Plaintiff respectfully requests the Court schedule the final fairness hearing and adopt the proposed schedule of events outlined above.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court grant the unopposed motion to direct class notice and preliminarily approve class action settlement and the relief prayed for therein, enter the proposed order (Ex. 3), and for any other relief the Court deems appropriate under the circumstances.

Dated: March 12, 2021

Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**
Derrek W. Cummings, Esq., PA Bar 83286
Larry A. Weisberg, Esq., PA Bar 83410
2704 Commerce Dr., Suite B
Harrisburg, Pennsylvania 17110
Telephone:    (717) 238-5707
Facsimile:    (717) 233-8133
dcummings@weisbergcummings.com
lweisberg@weisbergcummings.com

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson, Esq., *pro hac vice*
Alexander T. Ricke, Esq., *pro hac vice*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    (816) 714-7100
Facsimile:    (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, Esq., *pro hac vice*
Michael J. Rahmberg, Esq., *pro hac vice*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri   64068-1170
Telephone:    (816) 781-0002
Facsimile:    (816) 781-1984
ryan@mcclellandlawfirm.com
mrahmberg@mcclellandlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2021, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

*/s/ Alexander T. Ricke*

**ATTORNEY FOR PLAINTIFF**